IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05 C 3781 |
| ) | |
| ARI SQUIRE and ACCUCARE, INC. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The United States has sued Ari Squire and AccuCare, Inc. for violations of the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq.*, payment by mistake, unjust enrichment, and common law fraud. AccuCare has been held in default. Squire has moved to dismiss the claims against him. For the reasons stated below, the Court grants Squire's motion in part and denies it in part.

**Facts**

Medicare is a federal program that defrays the cost of certain health care services for the elderly. The program is administered by the Centers for Medicare and Medicaid Services (CMS) of the Department of Health and Human Services.

Medicare Part A pays for institutional care, including hospital, nursing home, and home health care. To implement this component of Medicare, the CMS enters agreements with health care providers, who provide health care services, and with fiscal intermediaries, who process and

pay interim claims from health care providers and review and audit providers' annual cost reports. Compl. ¶¶ 6-9. During any given year, health care providers submit interim reimbursement claims to the fiscal intermediary, and at the end of the year, they submit an annual cost report detailing their total Medicare-related costs and overhead expenses. By comparing the interim reimbursement claims and the annual cost reports, the fiscal intermediary determines whether health care providers have been overpaid and owe a refund or whether they have been underpaid and are owed further reimbursement. *Id.* ¶¶ 11-12.

To pay claims based on interim reimbursement claims or annual cost reports, the fiscal intermediary must process the payments. To facilitate this process, CMS had established Medicare bank accounts with commercial banks around the country. These accounts are used only to process Medicare payments, and they are governed by "tripartite agreements" between the banks, the fiscal intermediaries, and the United States. Pl. Resp. at 7.

Once a claim has been approved, there are two mechanisms for payment, depending on whether the provider is paid electronically or by check. Under either system, the fiscal intermediary notifies the bank to make a payment to the provider for a particular amount. At the end of each business day, the bank adds up its payment requests and then issues a "draw-down request," reflecting the day's total payment requests, to the Federal Reserve Bank. The bank then draws down the Medicare trust funds held by the Federal Reserve Bank for the fiscal intermediary's payment requests for the day. Pl. Resp. at 7-8.

The United States alleges that from January 1998 through 2001, Ari Squire was the president and chief executive officer of AccuCare, a health care provider under the Medicare program, and that Palmetto Government Benefits Administrators was AccuCare's fiscal

2

intermediary. Compl. ¶¶ 8; 18-19. The government's claims against Squire and AccuCare are based on the 1998 and 1999 cost reports AccuCare filed with Palmetto and the 2000 and 2001 cost reports AccuCare allegedly failed to file with Palmetto. Squire is claimed to have signed the certifications on both the 1998 and 1999 cost reports. *Id.* ¶ 18.

1. 1998 cost report

The government alleges that Squire fraudulently sought and received reimbursement for several fraudulent expenses on AccuCare's 1998 Cost Report, including:

- salary expenses for ghost consultant MaryAnn Zaborsky, who was not an employee of AccuCare and never performed any work for AccuCare;

- excessive owner compensation for Ari Squire, for whom a full-time salary was charged to Medicare even though he also worked for seven other companies during 1998;

- excessive administrator compensation for Annette Heneghan, for whom a full-time salary was charged to Medicare even though she spent at least ten percent of her time working for AccuHome Health in 1998;

- improper related party expenses for Over-Time Premium Finance Company, a company owned by Squire's father Morris;

- legal expenses incurred by AccuHome Health and Diamond Health Systems, two other companies owned by Squire;

- charitable contributions to Ida Crown Jewish Academy in 1998;

- excessive staff wages in 1998 for staff, for whom full-time salaries were charged to Medicare even though some worked only part-time for AccuCare and others worked only for Squire's other businesses;

- the cost of Squire's leased vehicle, the entire cost of which was charged to Medicare even though Squire worked at three other companies in 1998.

*Id.* ¶¶ 22, 24, 26, 28, 30, 33, 35-36, 39-40.

2. 1999 cost report

The government also alleges that Squire fraudulently sought and received reimbursement for several ineligible expenses on AccuCare's 1999 Cost Report, including:

- salary expenses for ghost consultant MaryAnn Zaborsky, who was not an employee of AccuCare and never performed any work for AccuCare;

- excessive owner compensation for Ari Squire, for whom a full-time salary was charged to Medicare even though he also worked for five other companies in 1999;

- excessive administrator compensation for Annette Heneghan, for whom a full-time salary was charged to Medicare even though she spent at least ten percent of her time working for AccuHome Health in 1999;

- improper related party expenses for Green Tree Industries, a company owned by Squire's father Morris;

- charitable contributions to Ida Crown Jewish Academy in 1999;

- excessive staff wages in 1999 for staff, for whom full-time salaries were charged to Medicare even though some worked only part-time for AccuCare and others worked only for Squire's other businesses;

- interest on unnecessary borrowing for AccuCare due to Squire's decision to divert money from AccuCare to his other business ventures;

- the cost of purchasing stock and/or patient lists from Nurses to You;

- late fees and penalties incurred in paying AccuCare bills late.

*Id.* ¶¶ 23, 25, 27, 29, 34, 37, 38, 41-42.

3. 2000 and 2001 cost reports

The government alleges that AccuCare received interim payments from Medicare at the outset of 2000 and 2001 but failed to file cost reports in 2000 and 2001 reconciling its interim payments for these years with the actual Medicare-related costs it had incurred. *Id.* ¶ 43.

**Discussion**

4

"Whether a complaint sufficiently states a claim turns on whether it meets the general rules of pleading a claim for relief." *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). In making this determination, the Court must take the factual allegations in the government's pleadings, including the complaint, briefs, and attached exhibits, as true, and we draw any reasonable inferences in favor of the government. *Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001).

### 1. Statute of limitations

The parties agree that the statute of limitations for the government's FCA, payment by mistake, and unjust enrichment claims is six years, and therefore, none of these claims is likely time-barred. *See* 31 U.S.C. § 3731(b)(1) (FCA); 28 U.S.C. § 2415(a) (contract claims). Both parties have indicated, however, that the government should amend its complaint to properly allege properly that the facts underlying these claims arose on or before June 28, 1999. The Court agrees and so orders.

The parties disagree about the proper statute of limitations for the government's common law fraud claim. In his opening memorandum, Squire argues that the five-year Illinois statute of limitations for common law fraud applies. *See* 735 ILCS 5/13-205 ("all civil actions not otherwise provided for"). In its response, the United States contends that the six-year federal statute of limitations for contract actions by the United States applies. *See* 28 U.S.C. § 2415(a). In his reply, Squire argues that one of two statutes of limitation applies: either the five-year Illinois statute for fraud or the three-year federal statute of limitations for tort actions by the United States. *See* 735 ILCS 5/13-205; 28 U.S.C. § 2415(b). Squire argues that under either statute, the government's common law fraud claim is time-barred.

5

Because the government's common law fraud claim is a claim of the United States that undoubtedly sounds in tort, 28 U.S.C. § 2415(b) provides the applicable statute of limitations period, namely three years. According to the government, Squire committed his most recent frauds by failing to file AccuCare's cost reports for 2000 and 2001 on May 31 and August 31 of 2001 respectively. The statute of limitations on the common law fraud claim thus expired approximately a year before the complaint was filed. The government's common law fraud claim is therefore dismissed.

### 2. Adequacy of pleading FCA claim

Squire contends that the government failed to plead its FCA claim with sufficient particularity to the extent it is based on AccuCare's failure to file cost reports in 2000 and 2001. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b)'s heightened pleading requirements apply to claims under the FCA because it is an anti-fraud statute. *United States ex. rel. Gross v. AIDS Research Alliance- Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Squire argues that the government's FCA claims based on AccuCare's failure to file its 2000 and 2001 cost reports fall short of these requirements. The government has failed to respond to this argument. The Court agrees with Squire. In contrast to its allegations of fraudulent claims in AccuCare's 1998 and 1999 cost reports, the government identifies no specific claims that it contends AccuCare fraudulently filed in 2000 or 2001. The Court therefore dismisses the government's FCA claim to the extent it is based on AccuCare's failure to file its 2000 and 2001 cost reports.

### 3. Adequacy of pleading payment by mistake and unjust enrichment claims

Squire argues that the Court should dismiss the government's claims of payment by mistake and unjust enrichment because the government has failed to allege how Squire benefitted, improperly or otherwise, from the receipt of funds by AccuCare. The government responds that Squire signed and certified the fraudulent cost reports submitted in AccuCare's name and that he received unearned payments, including salary payments, as a result of those actions. The Court agrees that the government has sufficiently alleged that Squire, the owner and operator of AccuCare, was paid by mistake and unjustly enriched as a result of the fraudulent reports allegedly filed by his company.

**4. Adequacy of pleading presentation of false claims to government**

The government claims that Squire violated the provision of the FCA establishing liability for anyone who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1); Compl. ¶ 48. Squire moves to dismiss this claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the government has made no allegations that Squire either presented a claim or caused a claim to be presented to an officer or employee of the government.

In making this argument, Squire relies heavily on *United States ex. rel. Totten v. Bombadier Corp.*, 380 F.3d 488 (D.C. Cir. 2004), a case in which the plaintiff brought a *qui tam* action claiming the defendants violated the FCA by delivering defective rail cars and submitting fraudulent invoices to Amtrak. The D.C. Circuit affirmed the dismissal of the complaint based partly on its interpretation of § 3729(a)(1). The court concluded that the defendants had not "presented" or "caused to be presented" a false claim to an "officer or employee of the

7

Government." Amtrak was not the government, so presenting the claim to Amtrak did not meet the presentment requirement, and even though Amtrak paid the defendants with funds received from the federal government, Amtrak had not presented defendants' claims to an officer or employee of the government. *Id.* at 490.

Judge Garland dissented. He contended that 31 U.S.C. § 3729(a)(1), when read in the context of the FCA as a whole and alongside the statute's legislative history, creates liability when a defendant makes a claim to a government grantee or contractor that is paid with funds already received from the government and when a defendant makes a claim to a grantee or contractor who seeks reimbursement from the government. Judge Garland contended that the majority, which ruled that the FCA covered only the latter situation, had ignored the importance of Congress's decision to add 31 U.S.C. § 3729(c) in 1986, which, as written and as intended, ensures that the FCA protects federal funds distributed through federal grantees and contractors. *Totten*, 380 F.3d at 510-13 (Garland, J., dissenting).

Whether this Court agrees with the *Totten* majority or Judge Garland's dissent, the government has sufficiently alleged that Squire caused a false claim to be presented to an officer or employee of the United States for payment or approval. Taking as true the allegations set forth in government's complaint and its response to plaintiff's motion to dismiss, after Squire and AccuCare submitted false claims to Palmetto, Palmetto paid those claims out of its commercial bank account and then requested and received reimbursement from the Federal Reserve Bank. Pl. Resp. at 7-8. This is sufficient to allege that Squire and AccuCare caused a false claim to be presented to an employee or officer of the federal government. *See United States ex. rel. Tyson v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 WL 2667207, at *1-3 (N.D.

8

Ill. Oct. 17, 2005) (Medicaid health provider caused false claims to be presenting to federal government by submitting them to an intermediary state agency); *but see United States ex. rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302, 1303-04 (N.D. Ala. 2004) (Medicaid health provider had not presented false claims to federal government by submitting them to intermediary state agency, but failing to consider 31 U.S.C. § 3729(a)(1) "causes to be presented" language).

**Conclusion**

For the foregoing reasons, the Court grants Squire's motion to dismiss [docket no. 9] the government's common law fraud claim and its FCA claim to the extent that it relies on Squire's and AccuCare's failure to file 2000 and 2001 cost reports. The Court also directs the government to file an amended complaint on or before December 30, 2005 alleging that its surviving claims arose on or after June 28, 1999. Squire's motion is otherwise denied.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Court

Date: December 12, 2005